CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

APR 13 2012

JULIA C. DUDLEY, CLERK
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| BARBARA J. VAUGHN, | ) | CASE NO. 4:11CV00029 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's

March 30, 2009 protectively-filed applications for a period of disability, disability insurance

benefits, and supplemental security income ("SSI") under the Social Security Act ("Act"), as

amended, 42 U.S.C. §§ 416, 423, and 1381 et seq., is before this court under authority of 28

U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate

findings, conclusions, and recommendations for the disposition of the case. The questions

presented are whether the Commissioner's final decision is supported by substantial evidence, or

whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the

reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the

Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final

decision, and DISMISSING this action from the docket of the court.

In a decision dated January 21, 2011, an Administrative Law Judge ("Law Judge") found

that plaintiff had not engaged in substantial gainful activity from March 1, 2007, her alleged date

of disability onset, through the date of the Law Judge's decision.[1] (R. 19, 21.) The Law Judge

---

[1] In order to qualify for disability insurance benefits, plaintiff must establish that she
became disabled prior to the expiration of her insured status, March 31, 2011. *See* 20 C.F.R. §
404.131(a). The Law Judge noted the record indicates that plaintiff worked since her alleged

determined plaintiff's bipolar disorder, personality disorder, history of substance abuse, and back disorder were severe impairments.[2] (R. 22.) He also concluded that plaintiff did not suffer an impairment or combination of impairments which meet or equal a listed impairment. (R. 22-24.) Further, the Law Judge found that plaintiff maintained the residual functional capacity ("RFC") to perform modified medium work[3] with several limitations.[4] (R. 24-34.) In reaching his conclusions about plaintiff's RFC, the Law Judge found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (R. 26.)

The Law Judge further relied on portions of the testimony of Sandra M. Wells Brown, Ed.D., a vocational expert ("VE"). (R. 77-84.) Based on this testimony, the Law Judge determined that, while plaintiff was precluded from performing her past relevant work as a hair-stylist and a cashier, alternate gainful employment was available to her, namely as a cleaner,

---

disability onset date, in spite of plaintiff's statements to the contrary; pointing out that a report from a May 2009 emergency room visit mentioned that plaintiff had severe lower back pain, "at work." (R. 21, 330.) The Law Judge also asserted that plaintiff had engaged in work-like activities by travelling on two occasions. (R. 21.)

[2] The Law Judge found that the evidence for plaintiff's back disorder was minimal and the evidence was insubstantial to establish a severe impairment of 12-months duration. However, he did not believe this issue was critical to the outcome and resolved the case on other grounds. (R. 22, FN2.)

[3] Here, the Law Judge defined modified medium work as being able to lift or carry 50 pounds occasionally and 20 pounds frequently, stand or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. (R. 24-25.) The Law Judge's modified medium work differs from the definition of medium work set forth in the regulations. There, medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567 (c).

[4] The Law Judge found that plaintiff's work should be limited by not climbing ladders, ropes, or scaffolds and only occasionally climbing stairs and ramps. She also would need to avoid concentrated exposure to workplace hazards, should be limited to simple unskilled work in a setting where the individual does not have to interact with the general public, and involve working more with things rather than people. (R. 25.)

2

kitchen helper, hand packager, merchandise marker, or dry cleaner. (R. 34-35.) Accordingly, the Law Judge found plaintiff was not disabled under the Act. (R. 35.)

Plaintiff appealed the Law Judge's January 21, 2011 decision to the Appeals Council. (R. 1-3.) In a decision issued on June 13, 2011, the Appeals Council found no reason under the rules to review the decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1.) Without stating its reasons, the Appeals Council also found that the additional evidence submitted by plaintiff did not provide a basis for changing the Law Judge's decision. (R. 2.) This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id*. When the Appeals Council considers and incorporates additional evidence into the record that was not submitted before the Law Judge, reviewing courts must consider the record as a whole, including the evidence offered on administrative appeal, in determining whether the Law Judge's decision is supported by substantial evidence. *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991). If no fact finder has

3

made findings as to the additional evidence and there is competing evidence in the record that makes it uncertain whether there is substantial evidence supporting the Law Judge's decision, the case must be remanded to the Commissioner for further fact finding. *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011).

In a brief filed in support of her motion for summary judgment, plaintiff contends that the Law Judge erred by "improperly" reviewing expert and counselor opinions and mischaracterizing evidence. First, plaintiff argues that the Law Judge "improperly" rejected the opinions of Richard Patterson, plaintiff's treating counselor, and Don S. Tessmann, M.D., plaintiff's treating psychiatrist. (Dkt. No 15, 19-21.) Plaintiff points out that Mr. Patterson has a master's degree, is a trained counselor, and had the most contact with plaintiff throughout her treatment, thus making his observations, analysis, and opinions germane to obtaining a full picture of her impairments. *Id.* at 20. Plaintiff contends first that, by dismissing Patterson's opinion the Law Judge contravened the regulatory requirement that he assess all relevant medical and other evidence, and, second, that he ignored the very person in the best position to report on the severity and functional effects of her impairments. *Id.*

Plaintiff also argues that the Law Judge was too quick to read inconsistency into the opinion of Dr. Tessmann. *Id.* Relying on *Scott v. Astrue*, 647 F.3d 734 (7th Cir. 2011), plaintiff points out that there is a great difference between a patient who responds to treatment and one who is able to enter the workforce and argues the Law Judge engaged in "cherry picking" from mixed results to support a denial of benefits. (Dkt. No. 15, 20-21). Further, plaintiff notes that a bipolar disorder, by its very nature, has fluctuating symptoms, and so by focusing merely on "good days," the Law Judge constructed an inaccurate impression of plaintiff's condition. *Id.*

Second, plaintiff argues that the Law Judge failed to consider specifically the six enumerated factors set forth in 20 C.F.R. § 404.1527(c)[5] for determining the weight to be given plaintiff's counselor, her psychiatrist, the state agency experts, and consultants. *Id.* at 21-22. Plaintiff points out that the Law Judge is required by the regulations to use these factors in assigning weight to medical opinions, and that the Law Judge's decision cannot stand when he merely adopts the opinions of the agency experts without engaging in the regulatory analysis for determining the weight they should be accorded. *Id.*

Finally, plaintiff offers several instances where she believes the Law Judge mischaracterized the evidence solely in order to support a denial of disability benefits. In other words, plaintiff claims the Law Judge cherry picked or ignored evidence in the record to support a denial of benefits, including evidence related to plaintiff's chronic bilateral hand pain, limited education, physician treatment notes, and the fluctuating nature of plaintiff's bipolar disorder. (Dkt. No. 15, at 16-17.) Additionally, plaintiff takes issue with the Law Judge's finding that plaintiff had worked and engaged in work-like activities since her alleged onset date, all on the basis of an emergency room note and plaintiff's admitted visits to her daughter. *Id.* at 22. She does not believe the reasons given by the Law Judge substantially support his finding.[6] *Id.* Thus, plaintiff asks the court to reverse the Commissioner's final decision and award disability benefits, or, in the affirmative, to remand the case for consideration by another Law Judge.

In his brief filed in support of his motion for summary judgment, the Commissioner contends that plaintiff is not disabled within the meaning of the Act, and that there is substantial

---

[5] Both plaintiff and the Commissioner actually cite 20 C.F.R. § 404.1527(d) and (e) throughout their briefs. However, the regulation was revised on March 26, 2012, after the parties' briefs had been filed, which changed the section's lettering. The substance of the two versions is identical. The undersigned will refer to the most recent version of the regulations.

[6] Though the Law Judge did find that the record indicated plaintiff had worked and engaged in work-like activities since her disability onset date, he appears to have gone further to conclude that such did not amount to substantial gainful activity. (R. 21.)

5

evidence to support the Law Judge's decision. First, the Commissioner contends that the medical evidence supports the Law Judge's RFC finding. (Dkt. No. 18, at 11-14.) He points out that plaintiff did not receive formal mental health treatment until almost two years after her alleged onset date, and the treatment she received was routine and conservative. *Id.* at 11-12. He also points out that plaintiff only twice sought treatment for her physical condition, the first time being over two years after her alleged onset date, and that the objective medical evidence shows relatively normal findings.[7] *Id.* at 12-13. Additionally, the Commissioner offers that plaintiff's self-reported daily activities support the Law Judge's RFC finding and undermine her claims of disabling mental and physical impairments. *Id.* at 13-14.

Second, the Commissioner argues that the Law Judge properly rejected the opinions of Dr. Tessmann and Mr. Patterson. The Commissioner believes that Tessmann's opinion is inconsistent with his mental examination findings and treatment. (Dkt. No. 18, at 155.) He offers that Tessmann reported that plaintiff achieved a global assessment of functioning score ("GAF") of 60, indicating moderate mental symptoms and limitations, which does not reflect mental impairments severe enough to preclude competitive employment. *Id.* Further, the Commissioner offers that Tessmann consistently reported findings reflecting a normal mental status. *Id.* Similarly, the Commissioner indicates that Mr. Patterson's opinion was inconsistent with the evidence of record, specifically his own counseling notes. *Id.* at 16. The Commissioner points out that Patterson's findings generally are unremarkable and show that plaintiff achieved GAF scores in the 50's, which indicate no more than moderate mental limitations and symptoms.

---

[7] The Commissioner relies on the opinions submitted by state agency consultants, psychologists, and physicians who found plaintiff was capable of working under certain limitations. The Commissioner also contends that the evidence of William Humphries, M.D., a consultative examiner, did not have other support in the record, pointing to unremarkable x-ray findings, examination notes, the failure of plaintiff to seek or require treatment for her hand during the relevant period, and the lack of similar findings by the state agency physicians. (Dkt. No. 18, at 13.)

6

*Id.* Based on these findings, along with the routine conservative treatment plaintiff received for her mental health impairments, the Commissioner concludes that the Law Judge's decision to reject some of plaintiff's evidence and give other parts of it less weight is supported by substantial evidence.

Third, the Commissioner argues that the Law Judge properly addressed and weighted the opinions of the state agency physicians and consultants. The Commissioner offers that agency physician opinions merit significant consideration and, in this case, were consistent with the other probative evidence of record. (Dkt. No. 18, at 19-20.) Further, the Commissioner contends that the regulations only required the Law Judge to consider the factors listed in 20 C.F.R. § 404.1527(c) and do not require the Law Judge to separately list each factor and his findings in his decision. *Id.* The Commissioner also points out that the Law Judge thoroughly assessed the opinions of the state experts in his decision. *Id.* at 19-20. Accordingly, the Commissioner believes that the Law Judge acted pursuant to the regulations and rulings in his review of the opinions offered by the state agency physicians and consultants, and that there is substantial evidence in support of the Commissioner's final decision.[8]

Taking plaintiff's arguments in order, the undersigned first must consider the Law Judge's decision to discount the opinions of Mr. Patterson and Dr. Tessmann. The Law Judge gave these opinions no weight, because he found they were not supported by the longitudinal record and were inconsistent with underlying examination notes. (R. 32-33.) The Law Judge's observations were accurate. Patterson noted on several occasions that plaintiff produced a GAF score of 55, indicating moderate limitations, twice described her mood as normal, and never pointed out the presence of any risk factors, such as issues relating to suicidal ideation, homicidal

---

[8] The Commissioner also argues that plaintiff submitted for the first time evidence on judicial review. (Dkt. No. 18, at 17-19.) Actually, the June 28, 2010 medical opinion of Mr. Patterson is already part of the record. (R. 395-396.) The undersigned will weigh it accordingly.

7

ideation, impulse control, self-destruction, or lack of self care. (R. 362-363, 372, 374-375, 377-379, 391-392, 401-407, 411-412.) His June 28, 2010 opinion also was submitted shortly after he reported that plaintiff had achieved a GAF score of 55. (R. 395-396, 411.) Further, the majority of Patterson's treatment notes recite plaintiff's own self-reported history about her condition rather than reflecting test results or other medical data. Moreover, the credibility of the history plaintiff's gave is put at issue here by her hearing testimony relating to alcohol, tobacco, and illegal drug use.[9] As the Law Judge acknowledged, had her examining mental health professionals been aware of these facts, their opinions likely would have been impacted, especially since it appears they were relying on her statements to them being truthful. (R. 33.)

Dr. Tessmann's treatment notes reveal that plaintiff scored a GAF between 55 and 60, indicating moderate limitations, which were consistent with the findings of consultative examiner Annemarie Carroll, M.D. (R. 316-317, 357-360, 364-366, 381-382, 413-415.) His mental status findings consistently were noted as unremarkable, indicating plaintiff was depressed but otherwise within normal limits in appearance, behavior, orientation, speech, range of affect, thought process, thought content, and perception. (R. 364-366, 381-382, 413-415.) Further, Tessmann's note that plaintiff probably was not capable of competitive employment is entitled only to the weight it is worth in view of the substantial evidence in the case. (R. 33, 317.) Whether plaintiff is able to work is an issue reserved to the Commissioner, and the opinions of medical professionals on that subject may not be accorded special weight or consideration. 20 C.F.R. § 404.1527(d) (2012). A thorough review of the record demonstrates

---

[9] Plaintiff indicated to the Law Judge that she had stopped smoking 7-10 years before, practically never drank alcohol, and had never used street drugs. (R. 33, 72-74.) However, the record is quite clear that plaintiff had continued smoking, admitted to drinking on several occasions, and, in fact, had used drugs. (R. 92-93, 324-325, 357-360, 365.)

to the undersigned that there is substantial evidence to support the Law Judge's decision not to accord more weight to the opinions of Mr. Patterson and Dr. Tessmann than he did.

Plaintiff's next argument is that the Law Judge erred by not applying the six factors set forth in 20 C.F.R. § 404.1527(c) to assess the weight given the medical opinions of record. It is true the regulations require the Commissioner to consider all six factors in evaluating the weight to assign medical opinions. 20 C.F.R. § 404.1527(c) (2012). However, the Law Judge is not required to make a seriatim assessment as if it were a sequential evaluation. If the court reasonably can determine that the Law Judge complied with the regulatory assessment process, then it can determine whether there is substantial evidence to support his decision. *See DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

Here, the Law Judge analyzed plaintiff's entire treatment record, including the reports, findings and opinions of Patterson, Tessmann, and each state agency and consultative expert. (R. 22-34.) He specifically addressed whether their medical opinions were supported by the underlying medical evidence and consistent with the record, two of the factors listed in the regulations. (R. 33-34.) He carefully analyzed the medical opinions in light of each other and the treatment findings of record, and made determinations of where those opinions were supported and where they were inconsistent with the weight of the evidence. The undersigned cannot say that he departed the regulatory framework here in determining the weight to be given the medical evidence.

Plaintiff's final argument is that the Law Judge mischaracterized or ignored evidence. Here, too, plaintiff's assertions are not quite accurate. The undersigned's review of the record reveals that the Law Judge considered the findings and opinion of Dr. Humphries as well the

evidence of plaintiff's limited education.[10] (R. 22, 29, 34.) The fact that the Law Judge did not discuss every aspect of the record, e.g. that it was Piedmont Community Services that sent plaintiff to the emergency room in November 2008, does not undermine the evidentiary support for his decision. Clearly a Law Judge must consider the entire record in coming to a decision, but he/she is not required to discuss the record in its entirety, especially when the details are not relevant to his decision. *See DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The undersigned is of the view that the Law Judge considered every aspect of plaintiff's treatment, though in the end, he simply did not find that the substantial evidence lay where plaintiff contended it did.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk

---

[10] The Law Judge accepted the majority of Dr. Humphries' findings. However, he dismissed Humphries' finding of manipulative restrictions as not being supported by the record, citing the lack of any treatment for a hand impairment. (R. 33-34.) The Law Judge also took into account plaintiff's limited education in his questions to the VE on whether jobs existed in the national economy that plaintiff could perform. (R. 33-34, 43.)

is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

_April 13, 2012_
Date